UNITED STATES, Appellee,

v.

Specialist Four Terence L. SWAGGER,
SSN 490–72–6142, United States
Army, Appellant.

CM 443129.

U.S. Army Court of Military Review.

30 June 1983.

Major Robert C. Rhodes, JAGC, Captain Warren G. Foote, JAGC, and Captain William T. Wilson, JAGC, were on the pleadings for appellant.

Colonel James Kucera, JAGC, Lieutenant Colonel John T. Edwards, JAGC, Captain Glenn D. Gillett, JAGC, and Captain Howard G. Cooley, JAGC, were on the pleadings for appellee.

Before MELNICK, McKAY and LEWIS, Appellate Military Judges.

OPINION OF THE COURT

McKAY, Judge:

Once again this court is required to adjudicate an issue on appeal that should never have come to be. The President of the appellant's court-martial at Fort Ord, California, was the installation provost marshal, *i.e.*, the chief law enforcement officer and the officer directly responsible to the Commander (the convening authority) for crime prevention at Fort Ord. Because his challenge for cause of this member, Colonel Fargason, was denied, Specialist Swagger, the appellant, now urges us to set aside his conviction of larceny (from a barracks at Fort Ord) and the approved sentence to a bad-conduct discharge, confinement at hard labor for one year, total forfeitures and reduction to the lowest enlisted grade. We reverse.

At his trial Swagger challenged Colonel Fargason for cause because of his position and functions as the installation provost marshal and his law enforcement background of some 25 years. The military judge denied the challenge. Swagger subsequently exercised his peremptory challenge against another member, a battalion commander who stated on voir dire that he viewed barracks larceny as a more serious type of larceny than one under other circumstances, and who also had been unsuccessfully challenged for cause. A second member having military police duties was not challenged.

Our position that the issue raised here is unnecessary litigation has been stated in numerous unpublished opinions of this Court and in *United States v. Brown,* 13 M.J. 890 (A.C.M.R.1982), *pet. denied,* 14 M.J. 283 (C.M.A.1982), where we pointed out that the appointment of policemen as courts-martial members is not a good practice. In *Brown* we refrained from establishing any *per se* rules in this area because of the possibility that in some situations it may be difficult to avoid such appointments. *See also United States v. Hedges,* 11 U.S.C.M.A. 642, 29 C.M.R. 458 (1960). Hence in *Brown* we went on to say we would be content to search for bias or prej-

udice in individual cases. *See United States v. Parker,* 6 U.S.C.M.A. 274, 19 C.M.R. 400 (1955).

The record in this case establishes that on 3 or 4 December 1981, Colonel Fargason departed Fort Ord on temporary duty for approximately one month. He has no recollection of seeing any report or information on the appellant's case before the trial. Other evidence establishes that in addition to his police and crime prevention responsibilities, Colonel Fargason has been a military policeman for 25 years, including an assignment at Fort Bragg as provost marshal and another as a Criminal Investigation Command (CID) Region Commander in Korea, has extensive military and civilian education in law enforcement, to include a masters degree in criminal justice, has frequently testified for the prosecution in courts-martial and felt that there was "no way" he could leave this experience "at the courtroom door." Other comments from Colonel Fargason indicate that he believed he had a greater "capability to evaluate evidence" than the average individual and the fact that charges had been referred to trial did not dispose him to believe the appellant guilty. When asked if he would weigh all the evidence fairly and render an impartial judgment, Colonel Fargason replied, "I would hope so." No effort was made to determine the existence of a more objective attitude.

Applying the test in *United States v. Parker, supra,* to evaluate a challenge for cause, *i.e.,* whether the prospective member was mentally free to render an impartial judgment based on the law and evidence, under usual circumstances we would not disturb the trial judge's determination on the challenge here of Colonel Fargason. There is something substantially different in this case, however, as the very essence of Colonel Fargason's existence as an Army officer was to enforce the law and prevent crime at Fort Ord. To this end he reviewed investigative reports (perhaps even that pertaining to this case) and results of trial. Referring to our common experience and knowledge we are aware of the great responsibility of a provost marshal at a major Army installation, and that ultimately he directs, coordinates or consults on all installation law enforcement activity. We believe that to ask or expect an officer to step from that position temporarily to that of president of a court-martial, and to exercise an objective and unbiased mental process to determine the guilt or innocence of an accused, places a burden upon an individual that is greater than most can or should bear. We are convinced that at least is the common perception. Therefore, as the embodiment of law enforcement and crime prevention at Fort Ord, Colonel Fargason's presence at Swagger's trial as president of the court-martial provided an "appearance of evil" denounced by this court in *United States v. Hampton,* 50 C.M.R. 232 (A.C.M.R. 1975), and requires reversal.[1] At the risk of being redundant—we say again—individuals assigned to military police duties should not be appointed as members of courts-martial. Those who are the principal law enforcement officers at an installation must not be.

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Senior Judge MELNICK and Judge LEWIS [2] concur.

---

**1.** In reaching this decision we are not unmindful of the decision of the Court of Military Appeals in *United States v. Edwards,* 4 U.S.C.M.A. 299, 15 C.M.R. 299 (1954). In *Edwards,* the court held there was no error in the denial of the challenge of a provost marshal where the issue was the extent of his pretrial knowledge of the facts of the case. The facts in the appellant's case distinguish it from the *Edwards* case.

**2.** Judge Lewis took final action in this case prior to his reassignment from the Court.